UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCISCO VELAZQUEZ, and all others similarly situated under 29 U.S.C. 216 (b), | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:15-cv-03170-M |
| EL POLLO REGIO IP, LLC, EL POLLO REGIO MANAGEMENT, LLC, EL POLLO REGIO, INC., DISTRIBUIDORA EL REGIO, INC., RICARDO CAMARENA and JUAN J. BAZALDUA, | § § § § § § § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR PROTECTIVE ORDER QUASHING PLAINTIFF'S NOTICE OF
<u>DEPOSITION OF JUAN BAZALDUA</u>**

COME NOW Defendants El Pollo Regio IP, LLC ("IP"), El Pollo Regio Management, LLC ("Mgt."), El Pollo Regio, Inc. ("Regio, Inc."), Distribuidora El Regio, Inc. ("Distribuidora"), Ricardo Camarena ("Mr. Camarena"), and Juan J. Bazaldua ("Mr. Bazaldua") (together, "Defendants"), and file this Reply in Support of Defendants' Emergency Motion for Protective Order Quashing Plaintiff's Notice of Deposition of Juan Bazaldua (the "Motion"), and would respectfully state as follows:

## I.   SUMMARY OF RELEVANT FACTS

Plaintiff's first specific request for a deposition date for Mr. Bazaldua was not made until March 1, 2017, more than five months after Plaintiff filed suit alleging overtime and minimum wage violations under the Fair Labor Standards Act ("FLSA") against Mr. Bazaldua, another individual, and several entities, only one of which actually employed Plaintiff. *See* (DE 40 at 8);

**REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR PROTECTIVE ORDER QUASHING PLAINTIFF'S NOTICE OF
DEPOSITION OF JUAN BAZALDUA** – Page 1

*see also* (DE 33 at Exhibit 3, 10-11); *see generally* (DE 1). After informing Plaintiff that Mr. Bazaldua would likely need to be deposed in Austin, the district in which he resides, Plaintiff's counsel did not attempt to schedule Mr. Bazaldua's deposition again until May 9, 2017, more than two months after the initial request. *See* (DE 40 at 10). In the interim, counsel for Plaintiff deposed: (1) the corporate representative for IP, Mgt., Regio, Inc., and Distribuidora, Hector Rodriguez; (2) Mr. Camarena, the owner of Distribuidora; and (3) and Antonio Limongi, Plaintiff's direct supervisor during the relevant time period. *See id. at* 15-355. None of these witnesses provided any testimony indicating that Mr. Bazaldua has any knowledge of facts relevant to Plaintiff's FLSA claims. *See generally id*. In fact, all of the testimony provided to date – even Plaintiff's own – undermines Plaintiff's allegation that Mr. Bazaldua is "a corporate officer and/or owner and/or manager" of Distribuidora or that he otherwise controlled the operations of Distribuidora, or possessed any power over Plaintiff's employment, schedule, or payment. *See* (DE 32 at 3-4). Despite this, on May 12, 2017, just three days after Plaintiff's counsel made his second specific request for Mr. Bazaldua's deposition, he unilaterally noticed Mr. Bazaldua's deposition for May 22, 2017. *See* (DE 33 at Exhibit 1).

Upon receiving the notice, defense counsel promptly advised Plaintiff's attorney that Ms. Jackson, the lead defense attorney on the case, was unavailable for the deposition on May 22 because she was undergoing a scheduled medical procedure that same day. *See id*. at Exhibit 2. Plaintiff seems to take issue with the fact that defense counsel did not also inform him that the witness was also unavailable on that date. *See* (DE 39 at ¶ 18). Frankly, defense counsel would never have dreamed that would have been necessary. Moving a unilaterally set deposition when opposing counsel is unavailable for medical reasons – especially when there is plenty of time to

reschedule the deposition – is the most basic form of civility. Could defense counsel have provided additional support of their unavailability? Certainly. Should they have had to? Certainly not.

## II.     ARGUMENTS AND AUTHORITIES

**A.     Based On The Discovery Conducted By Plaintiff To Date, It Is No Longer Plausible That Plaintiff Can Establish An Employer-Employee Relationship Exists Between Him And Mr. Bazaldua. The Only Purpose To Depose Mr. Bazaldua At This Time Is For Purposes Of Harassment.**

Plaintiff contends that his testimony "support[s] a finding that Mr. Bazaldua is Plaintiff's employer as defined by the FLSA." (DE 39 at ¶ 13). The particular testimony referenced by Plaintiff, which allegedly supports this finding, reads: "Q. What did Jorge Bazaldua do at the company? A. Well, he was there. He would go there. *They* also *would say that he was the owner. I don't know*." *See* (DE 33 at Exhibit 4, 18:24 to 19:1) (emphasis added). **Plaintiff explicitly admits *he does not know* what Mr. Bazaldua did at Distribuidora, and *that any such notion that Mr. Bazaldua "was the owner" is based on what "they" would say*.** *See id* (emphasis added)**.**

In another effort to create some legitimate need for Mr. Bazaldua's deposition, Plaintiff offers testimony from Mr. Camarena regarding Mr. Bazaldua's involvement in individual El Pollo Regio *restaurants* and the franchising agreements related to such restaurants. *See* (DE 39 at ¶ 13). However, the corporate representative for the defendant restaurants has already been deposed, and provided no testimony indicating that control of individual restaurants was in any way connected to control of Distribuidora. More importantly, Plaintiff himself has clearly testified that he has no reason to believe Mr. Bazaldua had any operational control over his employment – ever.[1]

---

[1] *See, e.g.,* (DE 33 at Exhibit 4, 20:2-17) ("Q. . . . [D]id either Ricardo Camarena or Juan Bazaldua . . . neither one of them set your work schedule, correct? A. These people would go there, but they never said anything to anybody. They weren't the ones saying, "This is wrong or this is a problem." The people that were leading everything there were the people who were in there at the distributor. Q. Okay. So again, neither one of those men controlled or set your work schedule, correct? . . . A. No, they didn't set the schedules. They were set by the people who were in charge of the distributor.").

**REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR PROTECTIVE ORDER QUASHING PLAINTIFF'S NOTICE OF
DEPOSITION OF JUAN BAZALDUA** – Page 3

Plaintiff also alleges that Mr. Bazaldua was the "hiring authority for the wider 'Mexican food business' that includes [Distribuidora]." *See* (DE 39 at ¶ 14). While Mr. Bazaldua may have hired Hector Rodriguez to be the COO of Regio, Inc. and Mgt., it was Mr. Camarena who hired Mr. Rodriguez to be the COO of Distribuidora.[2] Plaintiff fails to offer any evidence (nor does any exist) that Mr. Bazaldua ever hired any employees to work at Distribuidora or that, at the very least, he had the power to do so. *See generally* (DE 39).

Plaintiff cites to an Eleventh Circuit case, *Lamonica v. Safe Hurricane Shutters*,[3] to support his argument that "persons exercising operational control over an enterprise may be found to be employers" even when the control they exert over a particular plaintiff is only "indirect." *See* (DE 39 at ¶ 14). However, in *Lamonica*, the majority *owners* found to be individually liable under the FLSA exercised significant control over the business's day-to-day functions, including the compensation of employees, and the court noted such control was necessary. *See Lamonica*, 711 F.3d at 1314. Here, Mr. Bazaldua was not an owner[4] and exercised no such control over Distribuidora or any of its employees.[5]

In *Donovan v. Grim Hotel Co.*,[6] also cited by Plaintiff, the Court found that to be an FLSA "employer," individuals must have a certain degree of control over the employment relationship

---

[2] *See* (DE 40 at 26:6-8) ("Q. When you started working for Distribuidora, who hired you? A. Ricardo Camarena.").

[3] 711 F.3d 1299 (11th Cir. 2013).

[4] *See* (DE 40 at 180:4-6) ("Q. . . .What is your title, if you have one, with the company? A. I'm the owner of Distribuidora.); *see also id.* at 182:14-18 (Q. Is there anybody that's ever had any ownership interest in the company, other than you? . . . A. No."); *see also id.* at 25:2-15 (Q. "Do you know who the current owner or owners of Distribuidora are? A. Yes. Q. And who is that? A. Ricardo Camarena. Q. Do you know if there have ever been any other owners of Distribuidora other than Ricardo Camarena from 2009 until now? A. No. Q. . . . Is there anybody besides Ricardo Camarena that you know that's ever been an owner of Distribuidora? A. No.").

[5] *See supra* note 1; *see also* (DE 40 at 40:14-23) ("Q. For Mr. Velazquez, do you know how he was paid? . . . A. A check coming out of the payroll system. Q. Do you know who signed those checks? . . . A. Ricardo Camarena.").

[6] 747 F.2d 966 (5th Cir. 1984).

**REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR PROTECTIVE ORDER QUASHING PLAINTIFF'S NOTICE OF
DEPOSITION OF JUAN BAZALDUA** – Page 4

and noted that the Fifth Circuit "has underscored the importance of 'the economic realities' of employment" when determining who is an "employer" under the FLSA. *See Donovan*, 747 F.2d at 972 (internal citation omitted). Under this test, "the court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). While Plaintiff was not required to satisfy this test at the pleadings stage, the analysis is different at this point in the litigation because, based on the testimony of numerous witnesses, it is no longer plausible that Plaintiff will eventually be able to show that Mr. Bazaldua satisfies the standard. *See Aaron v. Leday*, No. 4:13-CV-01716, 2013 WL 5936623, at *10 (S.D. Tex. Nov. 5, 2013); *see also* (DE 32 at 3-4).

Further, Plaintiff now oddly alleges that Mr. Bazaldua's verifications of Defendants' Responses and Supplemental Responses to Plaintiff's Interrogatories on May 19, 2017 somehow establish doubt as to whether he properly answered the Interrogatories. This is surprising, considering that, just the day before, Plaintiff demanded the court compel these very verifications by Mr. Bazaldua. *Compare* (DE 39 at ¶¶ 15, 20 with DE 37 at 6).

**B.** **Despite The Fact That Mr. Bazaldua Is A Named Party, Justice Requires The Court To Protect Him From The Undue Burden And Harassment That His Deposition Would Necessarily Impose.**

The fact that that a deponent is a named party does not automatically establish the necessity of his or her deposition. *See Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990), *opinion modified on denial of reh'g* (Apr. 27, 1990) (trial court granted a protective order staying discovery, including depositions of named parties, and ultimately concluded such discovery was unnecessary). Instead, upon motion by a party from whom discovery is sought, and

for good cause shown, a district court is authorized "to make any order which justice requires" to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). Here, permitting Plaintiff to depose Mr. Bazaldua solely because he is a named Defendant would not comport with Rule 26 because it would it would be unduly burdensome and harassing to Mr. Bazaldua, and would improperly reward Plaintiff for suing an individual who had no direct involvement in any decisions affecting him. *See* Fed. R. Civ. P. 26(c)(1); *see also* (DE 32 at 3-4). As the party seeking to depose Mr. Bazaldua, plaintiff must show that the deposition "appears reasonably calculated to lead to the discovery of admissible evidence." *Spiegelberg Mfg., Inc. v. Hancock,* No. 3–07–CV–1314–G, 2007 WL 4258246 at * 1 (N.D. Tex. Dec.3, 2007) (citing Fed. R. Civ. P. 26(b)(1)). Plaintiff's blanket assertion that "[w]ithout Mr. Bazaldua's testimony, it will be impossible for any party to prove definitively what [he] does or does not know about the facts related to this case" does not meet Plaintiff's threshold burden to establish, among other things, that Mr. Bazaldua's deposition would not be unreasonably cumulative or that the same testimony cannot be obtained from another source that is more convenient and less burdensome or expensive. *See* (DE 39 at ¶ 20); *see also* Fed. R. Civ. P. 26(c)(1). Based on the undisputed facts already before the court, as a matter of law, Mr. Bazaldua cannot be found to be Plaintiff's employer for purposes of FLSA liability. *See Landry* at 436 ("[A] plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by [the party] to withstand a Rule 56(e) motion for summary judgment."). "Discovery is not justified when cost and inconvenience will be its sole result," which would be the case here. *See id*.

**C.    If The Court Determines Mr. Bazaldua's Deposition Is Justified, His Deposition Should Be Held In Austin, Texas, The District Of Mr. Bazaldua's Residence, At A Mutually Agreeable Date And Time.**

However, in the event that the Court determines Mr. Bazaldua's deposition is necessary, the remaining issue concerns the appropriate location for his deposition. While Plaintiff is not required to notice Mr. Bazaldua's deposition for Austin, there is a general presumption that "a defendant's deposition will be held in the district of his residence," unless plaintiff can show "peculiar" circumstances favoring a deposition at a different location, such as cost, convenience, and efficiency. *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001) (internal citations removed). Plaintiff has made no such showing here, and thus, the presumption that Mr. Bazaldua be examined in Austin, TX, his district of residence, is fully applicable. *See id.*; *see also generally* (DE 39). Plaintiff's request that Mr. Bazaldua's deposition be conducted in a courtroom or conference room at the Earle Cabell Federal Building due to "voluminous objections" made throughout discovery by defense counsel is similarly unfounded. *See* (DE 39 at ¶ 19). Such objections certainly cannot be characterized as "voluminous" when compared to the number of improper questions posed and discovery requests made by Plaintiff's counsel.[7]

---

[7] *See, e.g.*, (DE 40 at 42:5-22) ("Q. Did Distribuidora gross more than $500,000 -- MS. TOUMANI: Objection, vague, ambiguous. Q. (BY MR. MANTEUFFEL) Do you know what I'm talking about, as the Chief Operating Officer? A. Gross sales? . . . Q. (BY MR. MANTEUFFEL) Okay. Gross revenue, the first line on the tax return? A. Yes. Q. Okay. And did it -- did Distribuidora gross more than $500,000 in 2015? MS. TOUMANI: Objection, vague ambiguous. Q. (BY MR. MANTEUFFEL) Okay. Did Distribuidora generate gross sales in excess of $500,000 in 2015?"); *id.* at 46:9-11 ("Q. Okay. When you started working at Distribuidora, what was the overtime policy for Distribuidora? MS. TOUMANI: Objection, lacks foundation. Q. (BY MR. MANTEUFFEL) Okay. When you started working for Distribuidora, did -- did Distribuidora have an overtime policy?"); *id.* at 129:8-12 ("Q. Do you know whether or not El Pollo Regio, Inc. has ever had any other lawsuits involving wage an[d] hour? MS. TOUMANI: Objection. That's outside the scope of the deposition notice…"); *id.* at 196:5-10 ("Q. Okay. I've never done your line of work and – for Distribuidora, and probably the jurors will not have either. How is the company structured and how does it perform its function? MS. TOUMANI: Objection, vague and ambiguous, calls for a legal conclusion.").

**REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR PROTECTIVE ORDER QUASHING PLAINTIFF'S NOTICE OF
DEPOSITION OF JUAN BAZALDUA** – Page 7

The only case Plaintiff cites to in support of his request that the deposition be held at the Earle Cabell Federal Building is easily distinguishable. *See* (DE 39 at ¶ 19). In *Neiman v. Hale*,[8] the deponent himself unnecessarily asserted objections to numerous questions during his initial deposition, refused to answer questions due to objections that did not assert privilege, walked out of the deposition, and then filed a "broad and non-specific protective order" listing, without explanation, 111 proposed questions he believed to be objectionable. *Neiman*, 2014 WL 3855265 at *2-3. As a result, the Court denied the protective order and ordered the deposition to take place in the Court's courtroom or conference room "[t]o assist the parties in the prompt and efficient conclusion of the deposition . . . ." *Id*. at 3. Such assistance is not necessary here.

## III.   RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Defendants respectfully request that the Court (i) grant Defendants' Motion, (ii) order that Mr. Bazaldua need not appear for deposition, and (iii) grant Defendants such other and further relief to which they may be entitled at law or in equity. In the event that the Court orders Mr. Bazaldua be deposed, Defendants respectfully request the deposition occur in Austin, Texas at a date and time agreeable to both parties.

---

[8] 3:12-CV-2433-L-BN, 2014 WL 3855265 (N.D. Tex. Aug. 6, 2014).

**REPLY IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR PROTECTIVE ORDER QUASHING PLAINTIFF'S NOTICE OF
DEPOSITION OF JUAN BAZALDUA** – Page 8

Respectfully Submitted,

*s/ Marcia N. Jackson*
Marcia N. Jackson
Texas State Bar No. 24008411
marcia.jackson@wickphillips.com
Jessica P. Toumani
Texas State Bar No. 24081974
jessica.toumani@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Ave., Suite 100
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On May 24, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*s/ Marcia Jackson*
Marcia Jackson